# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| GREGORY RUSCITTI, individually and on behalf of a Class of similarly situated individuals, | )<br>)<br>)<br>) |
| Plaintiff, | ) Case No. 1:11-cv-03121<br>)<br>) Honorable Blanche M. Manning<br>) |
| vs. | )<br>) |
| ORECK CORPORATION, | )<br>) |
| Defendant. | )<br>)<br>) |

## **DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS**

Oreck Corporation is a leading manufacturer of vacuums and other floor cleaning products. Plaintiff's purported nationwide class action is a classic "follow on" lawsuit attempting to capitalize on a nonpublic administrative inquiry by the Federal Trade Commission ("FTC") concerning the substantiation of certain advertising claims involving Oreck's Halo vacuum cleaner that resulted in a settlement agreement affirmatively acknowledging that Oreck does not admit any wrongdoing. By premising his entire case on allegations of deception typically found in FTC actions conducted by the agency's staff in the Division of Advertising Practices, and by simply parroting the elements of various causes of action (rather than supporting those causes of action with actual facts establishing a plausible basis for recovery), Plaintiff has failed to allege any viable claims for relief. As a result, his entire complaint should be dismissed.

# ARGUMENT

## I. Legal Standard

A claim should be dismissed under Fed. R. Civ. P. 12(b)(6) if the facts alleged—taken as true—would not provide a plausible basis for relief. This standard "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A plaintiff must allege sufficient facts to "nudge[] their claims across the line from conceivable to plausible." *Id.* at 570; *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1951 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1949; *see also Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Moreover, claims alleging fraud are governed by a heightened pleading standard. *See* Fed. R. Civ. P. 9(b). As discussed below, the allegations in this case do not come close to meeting these standards.

## II. Plaintiff's First Count Should Be Dismissed Because Plaintiff Is Not Oreck's Competitor And Cannot Allege Danger Of Future Harm

Plaintiff's Count I purports to state a claim under the Illinois Deceptive Trade Practices Act, 815 Ill. Comp. Stat. Ann. 510/1 *et seq.* (2010) ("IDTPA"), also known as the Illinois Uniform Deceptive Trade Practices Act ("IUDTPA"). However, Plaintiff and the members of the putative class lack standing to bring a claim under that act.

It is well established that the IUDTPA is "primarily directed towards acts which unreasonably interfere with another's conduct of his business." *Phillips v. Cox*, 632 N.E.2d 668, 670 (Ill. App. Ct. 1994). The IUDTPA was not intended to be a consumer protection statute. *Chabraja v. Avis Rent A Car Sys., Inc.*, 549 N.E.2d 872, 876 (Ill. App. Ct. 1989).

An exception to this rule is "where that consumer can allege facts that indicate he is likely to be damaged by defendant's conduct in the future." *Robinson v. Toyota Motor Credit*

*Corp.*, 735 N.E.2d 724, 735 (Ill. App. Ct. 2000), *rev'd on other grounds*, 775 N.E.2d 951 (Ill. 2002). However, most consumers cannot satisfy this exception because once they are aware of the allegedly deceptive conduct, they are not in danger of succumbing to it in the future. *Id.* at 735 (affirming dismissal of IUDTPA claim because "Plaintiffs are now aware of the potential problems associated with defendants' lease and, armed with that knowledge, can avoid them."); *see also Popp v. Cash Station, Inc.,* 613 N.E.2d 1150, 1157 (Ill. App. Ct. 1992) (affirming dismissal of IUDTPA claim where "plaintiff is now aware that the defendants' ATM system provides what she considers to be inadequate security" thereby preventing "confusion in the future arising from defendants' alleged non-disclosure in marketing their services"); *Greenberg v. United Airlines*, 563 N.E.2d 1031, 1037 (Ill. App. Ct. 1990) (IUDTPA claim dismissed because plaintiffs now know United's rules and, therefore, are not likely to suffer future harm).

Similarly here, there is no allegation that Plaintiff is a competitor whose business interests were harmed by Oreck, or that Plaintiff and the putative class will be harmed by future conduct. Instead, Plaintiff merely recites boilerplate language referencing ***past*** advertisements by Oreck that supposedly deceived him and the consuming public. (Compl. ¶¶ 17-18.) This pleading defect is fatal and cannot be cured through any conceivable amendment.

### III.     Count II Does Not State A Viable Claim Under The Illinois Consumer Fraud Act

#### A.     Plaintiff's Claim Under The ICFA Is Premised On Fraud, And Thus Must Be Pled With Specificity

Plaintiff's ICFA claim is premised on allegedly false and fraudulent advertising; he alleges that Oreck made "false and/or deceptive representations and omissions" in marketing the Oreck Halo. (Compl. ¶ 23.) Consequently, his fraud allegations must comply with the heightened pleading standard of Rule 9(b). *MacNeil Auto. Prods. Ltd. v. Cannon Auto. Ltd*, 715 F.Supp.2d 786, 793 (N.D. Ill. 2010) ("[c]laims based on deceptive practices under the Consumer

3

Fraud Act sound in fraud and so, when brought in federal court, must be pled with particularity"); *see also Borsellino v. Goldman Sachs Grp., Inc.,* 477 F.3d 502, 507 (7th Cir. 2007); *In Re Yasmin & Yaz (Drospirenone) Mktg., Sales Practices & Prods. Liab. Litig.*, 692 F.Supp.2d 1012, 1023 (S.D. Ill. 2010).

To satisfy Rule 9(b), Plaintiff must identify the actual representations that he claims to have seen and relied upon in purchasing an Oreck vacuum, *i.e*, "the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Vicom. Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 777 (7th Cir. 1994) (quoting *Uni\*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 923 (7th Cir. 1992)). This requirement is particularly critical in a class action because Illinois law requires that each class member have seen and relied upon the ***same*** "deceptive" advertising. *Barbara's Sales, Inc. v. Intel Corp.,* 879 N.E.2d 910, 927 (Ill. 2007) ("Under *Oliveira* [*v. Amoco Oil Co*., 776 N.E.2d 151 (Ill 2002)] and its progeny, plaintiffs must prove that each and every consumer who seeks redress actually saw and was deceived by the statements in question."); *accord*, *DeBouse v. Bayer AG,* 922 N.E.2d 309, 315 (Ill. 2009).

Here, Plaintiff has failed to identify ***any*** purportedly deceptive statement that ***he*** personally viewed and relied upon in buying his Oreck vacuum. Indeed, Plaintiff merely parroted advertisements for the Oreck Halo and an Oreck air purifier mentioned in the FTC administrative complaint that flowed from a nonpublic inquiry concerning substantiation for certain claims, and then offered one vague allegation of reliance. (Compl. ¶ 11 ("Plaintiff was misled by Oreck's false and/or deceptive marketing, advertising, and other promotional materials . . .[and] read, considered and based his decision to buy the products in substantial part on Oreck's false and/or misleading representations.").) Plaintiff's utter failure to identify ***any*** of the

4

purported ads that he supposedly saw and relied upon – the "what," "where" and "when" – is fatal to his claim. Accordingly, Count II should be dismissed.

      **B.    In Addition To Lacking Specificity, Count II Fails To Aver Factual Allegations That, If Proven, Would Constitute False Representations, Causation Or Damages**

In addition to failing to adequately identify the statements to which Plaintiff was purportedly exposed, Plaintiff also fails to allege other necessary elements of his ICFA claim:

> To state a cause of action under the Illinois Consumer Fraud Act, five elements must be proven: (1) a deceptive act or unfair practice occurred, (2) the defendant intended for plaintiff to rely on the deception, (3) the deception occurred in the course of conduct involving trade or commerce, (4) the plaintiff sustained actual damages, and (5) such damages were proximately caused by the defendant's deception.

*In Re Yasmin & Yaz*, 692 F.Supp.2d at 1023 (citing *Dubey v. Pub. Storage, Inc.*, 918 N.E.2d 265, 277 (Ill. App. Ct. 2009)). As shown below, Plaintiff's attempt to state a claim under the ICFA is defective on several levels.

          1.    The "Conclusory" Advertising Claims That Plaintiff Alleges To Be False Are Not Actually Contained In The Subject Advertising

Importantly, Plaintiff has failed to identify a single statement in Oreck's advertising that he alleges to be false. Rather, the allegedly deceptive messages he attributes to Oreck's advertising reflect his "spin" on the advertisements cited in his Complaint. More specifically, in Paragraph 9 Plaintiff claims that Oreck advertised that the Oreck Halo (A) "substantially reduces the risk of or prevents" the flu; (B) "substantially reduces the risk of or prevents other illnesses or ailments"; (C) will "eliminate all or virtually all" common germs and allergens found on the floors in users' homes; (D) that its UV-C light is effective against germs, bacteria, dust mites, mold and viruses "embedded in carpets"; and that (E) Oreck has stated that "[s]cientific tests

5

prove that users of the Oreck Halo will eliminate or virtually eliminate many common germs and allergens found on the floors in their homes." (Compl. ¶ 9.)

However, the advertising Plaintiff includes in his Complaint does not contain such statements. The Flu Fighters web ad says that Oreck's vacuum "*[h]elps reduce* the flu on virtually any *surface*[.]" (Compl. ¶ 8, emphasis added.) Likewise, the infomercial Plaintiff cites states that the Oreck Halo "can kill and *reduce many* germs and bacteria *on* all your floors[.]" (*Id.*) Similarly, the cited print advertisement refers to Oreck's vacuum being "designed to help protect your family from *many* of those microscopic, uninvited guests" and states that it "can kill *many* bacteria, viruses, dust mite eggs, and even mold *on* any floor *surface*." (*Id.*) This is a far cry from claiming that *all* germs were "eliminated or virtually eliminated," or that the Oreck Halo killed germs "embedded" in carpet rather than on floor surfaces.[1] The Court should summarily reject Plaintiff's manufacture of "implied" deceptive statements that directly contradict the text of Oreck's actual advertisements.

### 2. Plaintiff Has Failed To Allege That The Statements Contained In Oreck's Advertising Were False

With respect to falsity, Plaintiff subtly avoids alleging that the cited advertisements in Paragraph 8 are false, *i.e.* that the vacuum does not kill germs. Rather, his criticism is a deficiency in the substantiation regarding the "implied" claims that he parroted from the FTC's unproven administrative allegations: "[s]cientific tests do not prove that users of the Oreck Halo will eliminate or virtually eliminate many common germs and allergens found on the floors in their homes." (Compl. ¶ 10.) But, none of the Oreck advertising cited in Plaintiff's Complaint claims that the Oreck Halo would "*eliminate or virtually eliminate* many common germs and

---

[1] The only numerical statement Plaintiff cites is contained in an Oreck infomercial, where the announcer stated "The light chamber in the Oreck Halo has killed up to 99.9% of bacteria exposed to its light in one second or less." (Compl. ¶ 8.) However, Plaintiff did not allege that *this* statement was untrue.

allergens" in their homes (instead referencing reducing or helping reduce), let alone that "scientific tests" had proven such "elimination." Thus, it is of no consequence when Plaintiff knocks down the straw man he has erected to then proclaim in Paragraph 10 that "scientific tests *do not prove* that users of the Oreck Halo will *eliminate or virtually eliminate* many common germs and allergens found on the floors in their homes." (*Id.*, emphasis added.) Even taking Paragraph 10 as true, that paragraph does not render any of Oreck's advertising statements *false* because none of the actual advertising cited in the Complaint states that the Oreck Halo wholly "eliminates" or "virtually eliminates" all germs found on the floors of homes.

Thus, the allegations of deception and falsity in Count II are exactly the type of "mere conclusory statements" or "'naked assertion[s]' devoid of 'further factual enhancement'" that the United States Supreme Court has held are insufficient to state a claim as a matter of law. *Ashcroft v. Iqbal*, 129 S. Ct. at 1949 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. at 557). While a complaint "does not require 'detailed factual allegations,'" it requires specific "factual content that allows a reasonable inference that the defendant is liable" for an injury to the plaintiff. *Id*. By the standards announced in *Iqbal* and *Twombly*, Count II is patently deficient.

Furthermore, assuming *arguendo* that the advertising claims identified in Paragraph 9 were made, the Complaint falls markedly short of alleging that the statements are actually false. The only "falsehood" alleged in Paragraph 10 is that "scientific tests *do not prove* that users of the Oreck Halo will eliminate or virtually eliminate many common germs and allergens found on the floors in their homes." (Compl. ¶ 10, emphasis added.) Significantly, however, Plaintiff disingenuously *avoids* alleging either (a) that scientific studies "prove" that the Oreck Halo *does not work* in this manner, or (b) that there are *no* scientific studies proving the claims. Thus,

7

Paragraph 10 merely alleges a deficiency in substantiation, not in performance. On the threshold requirement of alleging falsity, Plaintiff's Complaint is thoroughly defective.

        3.      <u>Because Plaintiff Never Alleges That The Vacuum Does Not Work In The Manner Advertised, He Fails To Allege Damages Or Proximate Cause</u>

As noted above, Oreck never stated anywhere in its advertising that "[s]cientific tests prove that users of the Oreck Halo will eliminate or virtually eliminate many common germs and allergens found on the floors in their homes." (Compl. ¶ 9.) Even if the advertising could be interpreted to have made such a statement, however, Plaintiff's ICFA claim would ***still fail*** because ***nowhere in Plaintiff's Complaint does Plaintiff actually allege that the vacuum failed to work as advertised***. This pleading omission dooms Plaintiff's entire claim because, without claiming that the vacuum does ***not*** kill germs as advertised, Plaintiff failed to allege facts that constitute either damages or proximate cause resulting from the allegedly false advertising. If Plaintiff's vacuum does indeed kill germs, then Plaintiff could not possibly have been damaged by purchasing it.

In fact, Plaintiff did not even attempt to allege damages or proximate cause in terms of not being provided the benefit for which he bargained, as Count II alleges only that "Plaintiff and the class either have or have likely been misled by Oreck into purchasing and paying for the Halo products." A "likely to have been misled" standard only is enforceable by the Attorney General; a private plaintiff is required to allege actual deception, and damages proximately caused by the deception. *Oshana v. Coca-Cola Co.,* 472 F.3d 506, 514-15 (7th Cir. 2006) ("Unlike public actions for violating the ICFA, a private cause of action under the ICFA requires a showing of proximate causation."). Here, Plaintiff's ICFA claim appears to be premised on the concept that he and members of the putative class were damaged because of the purported absence of – or lack of rigor in – scientific studies "proving" that Oreck's vacuum "eliminated or

8

virtually eliminated" all germs. However, Plaintiff does not allege (because he has no basis for doing so and, therefore, could not allege consistent with Rule 11) that Oreck's vacuum does not kill germs. Because Plaintiff has not affirmatively alleged that his Oreck vacuum did not kill germs in the manner advertised, he has not identified any alleged damages proximately caused by Oreck's advertising. Thus, he has failed to state an actionable claim.

### C. ICFA Claims Cannot Be Brought On Behalf of a Nationwide Class

The Illinois Supreme Court repeatedly has confirmed that the Illinois Consumer Fraud Act applies only to fraudulent transactions that take place "primarily and substantially" in Illinois. *Barbara's Sales*, 879 N.E.2d at 919; *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 853-54 (Ill. 2005). It appears that Plaintiff is attempting to bring Count II on behalf of the entire putative nationwide class. (Compl. ¶ 21 ("Plaintiff brings this class action on behalf of himself and all other members of the class asserting claims under the [ICFA].") However, Plaintiff has not alleged, nor could he truthfully amend his complaint to allege, that Oreck Halo sales for the entire putative nationwide class occurred "primarily and substantially" in Illinois. There simply is no nexus to link all of the sales to Illinois. Thus, this claim cannot be stated on behalf of a putative nationwide class.

### IV. Plaintiff Lacks Standing To Assert Count III, Which Is Premised On The Consumer Protection Statutes Of States Other Than Illinois

Count III is labeled, "Violation of State Consumer Protection Laws," and Plaintiff avers therein that "Plaintiff and each member of the class are consumers entitled to the protection of the consumer protection laws of the state in which he or she purchased the Halo product." (Compl. ¶ 27.) However, Plaintiff did not purchase his vacuum in any state outside Illinois and, thus, he has no standing to assert claims under those states' laws.

The "irreducible constitutional minimum of standing" requires an injury that is "concrete and particularized," affecting the plaintiff "in a personal and individual way." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 & n.1 (1992). Although Plaintiff sues on behalf of a putative class that includes members of other states, a would-be "representative" plaintiff cannot "piggy-back on the injuries of . . . unnamed class members" to meet the standing requirement. *Payton v. Cnty. of Kane*, 308 F.3d 673, 682 (7th Cir. 2002). In other words, "named plaintiffs . . . must allege and show that they personally have been injured," and cannot avoid dismissal by alleging that "other, unidentified members" of the putative class suffered injury. *Warth v. Seldin*, 422 U.S. 490, 502 (1975); *see also Payton*, 308 F.3d at 682 ("[S]tanding cannot be acquired through the back door of a class action.").

As to Count III, Plaintiff fails to allege a basis for *his* standing to bring claims under the consumer protection statutes identified in Count III, which he admits apply to the purchasers in *those* states. Thus, the standing requirements prevent him from "piggybacking" on the possible standing of putative class members to bring those claims on his own behalf or theirs. *Payton*, 308 F.3d at 682. Accordingly, this claim should be dismissed.

**V.     Plaintiff's Claim For Breach Of Express Warranty Is Defective**

    **A.     Plaintiff Has Not Alleged A Failure To Comply With The Express Statements In The Advertisements**

Plaintiff's claim for breach of *express* warranty fails because the "breach" Plaintiff cites is of a supposed "warranty" Plaintiff claims was *implied* by Oreck's advertising – that the Halo vacuum would "eliminate or virtually eliminate" the germs in the buyer's house. (Compl. ¶ 36.) In other words, the "express warranty" Plaintiff attempts to invoke is not "express" at all. Thus, Plaintiff has failed to state this fundamental element of his claim:

> In a breach of express warranty action under the UCC, plaintiff must show a breach of an affirmation of fact or promise that was

10

> made a part of the basis of the bargain. Since express warranties are contractual in nature, ***the language of the warranty itself is what controls and dictates the obligations and rights of the various parties***.

*Hasek v. DaimlerChrysler Corp.*, 745 N.E.2d 627, 634 (Ill. App. Ct. 2001) (emphasis added) (citing *Wheeler v. Sunbelt Tool Co.,* 537 N.E.2d 1332, 1342 (Ill. App. Ct. 1989)).

Here, none of the advertisements identified by Plaintiff expressly claim to "eliminate or virtually eliminate" all germs all the time. Thus, Plaintiff's Complaint has not established the existence of an express warranty by Oreck to "eliminate" or "virtually eliminate" certain germs in Plaintiff's house, as required by 810 Ill. Comp. Stat. 5/2-313 (2010).

      **B.**     **Plaintiff's Breach of Express Warranty Claim Cannot Succeed In The Absence Of Notice Of The Purported Defect**

Buyers in Illinois who sue for breach of warranty must directly notify the seller of the troublesome nature of the transaction or be barred from recovering for a breach of warranty. *Connick v. Suzuki Motor Co., Ltd.*, 675 N.E.2d 584, 590 (Ill. 1996). Plaintiff does not even attempt to satisfy this notice requirement in his breach of warranty claim. (Compl. ¶¶ 35-42.) Importantly, pre-litigation notice is required because in cases "where the breach has not resulted in personal injury, the UCC indicates a preference that the breach be cured without a lawsuit." *Connick*, 675 N.E.2d at 590-91. Moreover, because Plaintiff does not claim a physical injury, he may not rely on the filing of his complaint to meet the notice requirement. *Id.* at 590; *Perona v. Volkswagon of Am., Inc.*, 684 N.E.2d 859, 864 (Ill. App. Ct. 1997) (commencement of lawsuit does not satisfy notice requirement for economic loss breach of warranty claims).

Nor may Plaintiff argue that notice was not required because Oreck was aware of the alleged defect in its vacuum through the FTC proceedings or otherwise. The FTC nonpublic, administrative investigation (conducted by the staff in the Bureau of Consumer Protection's Advertising Division) did not allege any defect with Oreck's vacuum but, rather, addressed the

11

quality and quantity of substantiation that Oreck had regarding certain advertising claims. (Compl. Exh. 1, ¶ 11.) Also, numerous courts across the country have rejected the argument that a defendant's awareness of an alleged defect obviates the notice requirement. In *Connick*, for example, the court held that "even if a manufacturer is aware of problems with a particular product line, the notice requirement of section 2-607 is satisfied *only where the manufacturer is somehow apprised of the trouble with the particular product purchased by a particular buyer*." 675 N.E.2d at 590 (emphasis added). Indeed, even recall notices do not satisfy the UCC's notice requirement. *Perona*, 684 N.E.2d at 863-64. Therefore, Plaintiff's warranty claims are barred in the absence of notice.

### VI. Plaintiff's Claim For Breach of "Implied Warranty Of Merchantability And Fitness For A Particular Purpose" Is Likewise Defective

#### A. Plaintiff's Implied Warranty Claim Also Fails In The Absence Of Notice

Providing notice of a defect is a pre-condition to bringing claims for breach of either an express or implied warranty. *Connick*, 675 N.E.2d at 587-90 (upholding dismissal of claims for breach of express and implied warranties where plaintiff gave no pre-filing notice of the defects with his vehicle). Thus, the absence of notice bars this claim as well.

#### B. Plaintiff's Claim Is Also Fatally Schizophrenic In Claiming Simultaneous Breaches Of Implied Warranties Of "Merchantability And Fitness For A Particular Purpose"

Plaintiff confuses the concept of "implied ad claims" within Oreck's advertising and the concept of an implied warranty. As discussed above, express advertising claims can become part of an express warranty, but the two types of "implied" warranties rely on very different concepts, neither of which Plaintiff has alleged to exist here. The two warranties implied under the law are inherently inconsistent, thereby rendering Plaintiff's feeble attempt to weave them into one claim beyond salvation.

The implied warranty of fitness for a particular purpose applies only where the goods at issue are to be used for a particular purpose rather than their ordinary use. *Indus. Hard Chrome Ltd. v. Hetran, Inc.*, 64 F. Supp. 2d 741, 746 (N.D. Ill. 1999). Whether or not a product is sold for a "particular purpose" depends on whether the consumer is to put the product to a specific use other than its general marketability. As the comments to Illinois' version of the UCC explain:

> A "particular purpose" differs from the ordinary purpose for which the goods are used in that it envisages *a specific use by the buyer which is peculiar to the nature of his business* whereas the ordinary purposes for which goods are used are those envisaged in the concept of merchantability and go to uses which are customarily made of the goods in question. For example, shoes are generally used for the purpose of walking upon ordinary ground, but a seller may know that a particular pair was selected to be used for climbing mountains.

810 Ill. Comp. Stat. Ann. 5/2-315 cmt. 2 (2010) (emphasis added).

Consequently, where the product is to be put to ordinary use, the concept of an implied warranty of fitness for a particular purpose is inapplicable. *Anderson v. Farmers Hybrid Cos.*, 408 N.E.2d 1194, 1200-01 (Ill. App. Ct. 1980) (affirming dismissal of claim for breach of the implied warranty of fitness for a particular purpose based on the plaintiff's purchase of allegedly defective female pigs for ordinary breeding purposes); *Wiegel v. Stork Craft Mft.*, No. 09 C 7417, 2010 WL 3894386, at *1 (N.D. Ill. June 10, 2010) (dismissing implied warranty of fitness for particular purpose claim because the cribs at issue, which had been declared unsafe, were being used for the ordinary purpose for which a crib would be used).

Thus, a consumer good sold for its everyday purpose is not protected by an implied warranty for a particular purpose. Instead it is protected by an implied warranty of merchantability. *Wilson v. Massey-Ferguson, Inc.*, 315 N.E.2d 580, 581-83 (Ill. App. Ct. 1974); *Appelman v. Fabert Motors Inc.*, 174 N.E.2d 892, 896 (Ill. App. Ct. 1961).

Here, unwilling to commit to a single theory, Plaintiff erroneously ***combines*** these concepts by vaguely alleging that "Plaintiff and the class purchased Oreck's Halo product for ***the ordinary and/or particular purpose*** for which they were marketed, advertised, and/or sold by Oreck, namely, to eliminate common germs and allergens found in their homes[.]" (Compl. ¶ 44, emphasis added.) Plaintiff then avers that "Oreck breached this warranty by providing goods that were/are unsuitable for the purpose for which they were made[]" (Compl. ¶ 48), which pointedly fails to identify any actual problem with the Oreck Halo. As a result, Plaintiff's internally inconsistent allegations have not lucidly articulated the implied warranty at issue, nor why Oreck's vacuum breached said warranty. Thus, the claim should be dismissed.

## VII. Plaintiff's Unjust Enrichment Claim Is Equally Untenable

Count VI of Plaintiff's Complaint purports to state a claim for unjust enrichment. Unjust enrichment is a theory that allows a plaintiff to recover in equity based on an implied or "quasi" contract, and requires the plaintiff to allege that the defendant voluntarily accepted a benefit that would be inequitable for him to retain without payment. *Hartigan v. E&E Hauling, Inc.*, 607 N.E.2d 165, 177 (Ill. 1992).[2] However, "where there is a specific contract which governs the relationship of the parties, the doctrine of unjust enrichment has no application." *Id.*; *La Throp v. Bell Fed. Sav. & Loan Ass'n*, 370 N.E.2d 188, 195 (1977), *cert. denied*, 436 U.S. 925 (1978); *see also Indus. Lift Truck Serv. Corp. v. Mitsubishi Int'l Corp.*, 432 N.E.2d 999, 1002 (1982) (no quasi-contractual claim can arise when a contract exists between the parties concerning the same subject matter on which the quasi-contractual claim rests); *F.H. Prince & Co. v. Towers Fin. Corp.*, 656 N.E.2d 142, 151-52 (Ill. App. Ct. 1995) (dismissing unjust enrichment claim in face of actual agreement); *Brooklyn Bagel Boys, Inc. v. Earthgrains Refrigerated Dough Prods., Inc.*,

---

[2] Illinois law applies to Plaintiff's claim. *Samuels v. Old Kent Bank*, No. 96 C 6667, 1997 WL 458434, at *13 (N.D. Ill. 1997) (unjust enrichment claim is governed by each plaintiff's home state's law, not the law of the state where defendant has its headquarters).

No. 98 C 4421, 1999 WL 528499, at *10 (N.D. Ill. July 19, 1999) (rejecting unjust enrichment claim in the face of express distribution contract).

The Seventh Circuit also has consistently applied this rule holding that "[u]nder Illinois law, a plaintiff may not state a claim for unjust enrichment when a contract governs the relationship between the parties." *First Commodity Traders, Inc. v. Heinold Commodities, Inc.*, 766 F.2d 1007, 1011 (7th Cir. 1985) (citing *La Throp*, 370 N.E.2d at 195); *see also Borowski v. DePuy, Inc.*, 850 F.2d 297, 301 (7th Cir. 1988); *Murray v. ABT Assocs., Inc.*, 18 F.3d 1376, 1379 (7th Cir. 1994) ("Illinois does not permit recovery on a theory of quasi-contract when a real contract governs the parties' relations.").

Here, Plaintiff alleges the existence of an express warranty, and it is well settled that "express warranty claims . . . sound in contract." *Cipollone v. Liggett Grp.*, 505 U.S. 504, 525 n.23 (1992); *see also In re Aqua Dots Prods. Liab. Litig.,* 270 F.R.D. 377, 386 (N.D. Ill. 2010). Because the express written warranty between the parties governs Plaintiff's avenue of relief if the promised benefit was not received, the theory of unjust enrichment simply does not apply. Count VI must be dismissed.

## CONCLUSION

WHEREFORE, for the foregoing reasons, Oreck respectfully requests that this Court dismiss with prejudice each count in Plaintiff's Complaint as to Plaintiff individually, and by extension, as to the putative class as well.

    Respectfully submitted,

    ORECK CORPORATION

    By   /s/ David J. Doyle

Dated: July 15, 2011

David J. Doyle
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, Illinois 60601-9703
(312) 558-5600

David L. Aronoff, *Pro Hac Vice pending*
Gayle I. Jenkins, *Pro Hac Vice pending*
Saul S. Rostamian, *Pro Hac Vice pending*
333 South Grand, 38th Floor
Los Angeles, California 90071
(213) 615-1700

**CERTIFICATE OF SERVICE**

I, David J. Doyle, attorney for the Defendant, certify that a true and correct copy of the foregoing DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS was electronically filed with the Clerk of the Court using the CM/ECF system and sent via either hand delivery (in Chicago) or Federal Express (outside Chicago) this 15th day of July, 2011, to the following counsel for Plaintiff:

    Keith J. Keogh
    Craig Shapiro
    Timothy J. Sostrin
    KEOGH LAW, LTD.
    101 North Wacker Drive, Suite 605
    Chicago, Illinois 60606

    John Heenan
    HEENAN LAW FIRM
    3970 Avenue D, Suite A
    Billings, Montana 59102

    Ben Bingham
    BINGHAM & LEA, P.C.
    319 Maverick Street
    San Antonio, Texas 78212

                                                By:   /s/ David J. Doyle