# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| GREGORY RUSCITTI, individually and on behalf of a Class of similarly situated individuals, | )<br>)<br>) |
| Plaintiff, | ) Case No. 1:11-cv-03121<br>)<br>) Honorable Blanche M. Manning |
| vs. | )<br>) |
| ORECK CORPORATION, | )<br>) |
| Defendant. | )<br>)<br>) |

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO STAY

Oreck Corporation is a leading manufacturer of vacuums and other floor cleaning products. Plaintiff's lawsuit is a classic "follow on" class action, attempting to exploit a resolution between the FTC and Oreck of the FTC's inquiry into Oreck's advertising practices for the Oreck Halo vacuum. As a result of that administrative inquiry, which does not constitute a determination of liability that is either binding or instructive to the Court, Oreck agreed to make a lump sum payment to the FTC for consumer redress with the expectation that some or all of these funds would be distributed to consumers who purchased the Oreck Halo vacuum.

The Final Order ("Order") to which Oreck agreed: (1) expressly provides that the Order is not an admission of wrongdoing by Oreck; (2) requires the FTC to collect from Oreck monies relating to the consumers' purchase of the Halo vacuum cleaner at issue in this action as consumer redress; and (3) provides for the FTC to distribute those monies to consumers. The Order also makes clear that the agency's collection of money from Oreck is to benefit consumers, ***and is not a fine, as inaccurately portrayed by Plaintiff in his Complaint***: "No

portion of any payment under the judgment herein shall be deemed a payment of any fine, penalty, or punitive assessment." (Declaration of Brian D. Fergemann ("Fergemann Decl."), Exhs. A and B, ¶ VI.C.)

The distribution of the funds tendered by Oreck to the FTC for consumer redress is one of the final processes contemplated by the Order, representing the closing stages of the FTC's administrative process that focused on the parties' differing views concerning the quality and quantity of certain substantiation. The Order specifically contemplates the FTC's distribution of those funds through a consumer redress process that has yet to be initiated. Oreck provided certain consumer information to the FTC on June 30, 2011 – such as the names and contact information of consumers who purchased the Oreck Halo, including Plaintiff – and as of that date, the FTC had not yet begun to dispense the funds. As explained below, three separate legal doctrines support Oreck's request that this action be stayed until that process is completed: primary jurisdiction, judicial efficiency, and standing.

The doctrine of primary jurisdiction mandates that a case be stayed where a federal administrative agency has been entrusted to determine a relevant issue or where an agency has particular expertise, in order to avoid interference with the agency's administration processes. Here, the FTC has administratively taken control of the consumer redress procedure, which necessarily conflicts with the Plaintiff's use of this court to seek damages. Simply put, the FTC procedure is designed to provide restitution to consumers, and Plaintiff should not be allowed to interfere with that administrative process. Plaintiff's action raises the specter of duplicative recovery, and thus should be stayed until the consumer redress process has concluded.

Judicial efficiency also mandates a stay of this action. Plaintiff is seeking the very same funds that are potentially being returned to consumers from an administrative agency. The

FTC's actions will directly impact the issue of damages, which is an element of each claim alleged by Plaintiff. Until the redress process has been completed, the alleged "damages" each purchaser supposedly suffered – if any – cannot be determined. As such, the consumer redress process should be completed before the parties move forward with this lawsuit.

Lastly, it is unknown whether the FTC's consumer redress process will affect Plaintiff's standing in this action. Plaintiff's name, address and purchase information were provided to the FTC as part of the compliance process for the Order. Oreck has no knowledge or control as to how the FTC is going to distribute the funds, and as to whether this process possibly includes redistribution of the entire purchase price to consumers like Plaintiff, who came forward to express dissatisfaction with the product only after the publication of the Order. If Plaintiff receives money from the FTC, it would fundamentally impact his ability to claim damages and, thus, his standing to pursue claims in either an individual or representative capacity. Thus, the consumer redress process should be completed before this lawsuit proceeds.

Accordingly, Oreck respectfully requests that the Court stay this action until the consumer redress has been fully distributed, or the FTC otherwise indicates the consumer redress process has been concluded.

## FACTUAL BACKGROUND

Earlier this year, Oreck resolved a nonpublic and nonbinding administrative inquiry arising from the FTC's review of certain Oreck advertising by entering into a Consent Order that, upon being approved by the Commission, resulted in the FTC's May 19, 2011 Final Order served on Oreck on May 31, 2011. (Fergemann Decl., Exhs. A and B.)

The Order – representing a resolution of the FTC's dispute over Oreck's advertising substantiation where Oreck consistently disputed liability – did not contain any stipulation of

wrongdoing by Oreck. (Fergemann Decl., Exhs. A and B, ¶ 5 ("This agreement is for settlement purposes only and does not constitute an admission by proposed respondent that the law has been violated as alleged in the draft complaint, or that the facts as alleged in the draft complaint, other than the jurisdictional facts, are true.").) The stipulated resolution also required a payment by Oreck to the FTC "to be used for equitable relief, including but not limited to, consumer redress[.]" (Fergemann Decl., Exhs. A and B, ¶ VI.C.) As explained in this part of the Order, Oreck has no control over or input into the timing of the process, nor how much money consumers will receive. (*Id.*)

The Order further required that within thirty (30) days of the Final Order being served upon Oreck, Oreck would provide certain consumer information to the FTC, including each consumer's name, contact information, and the amount of money he or she paid for the Oreck Halo vacuum. (Fergemann Decl., Ex. A, ¶ V; Ex. C.) Oreck has just provided that information to the FTC, including information regarding Plaintiff's purchase of a Halo vacuum at an Oreck Homecare Center. (Fergemann Decl., ¶ 9.) Because the FTC only just recently obtained the requested purchaser information, as of June 30, 2011 the distribution of funds pursuant to a consumer redress process had not yet begun. (Fergemann Decl., ¶ 9.)

## ARGUMENT

I. **Plaintiff's Complaint Should Be Stayed Under The Primary Jurisdiction Doctrine**

   A. **Primary Jurisdiction Preserves The Proper Working Relationship Between Agencies And Courts, Promotes Consistency And Uniformity In Decision-Making, And Allows Agencies To Fulfill Their Responsibilities**

Courts routinely invoke their authority under the doctrine of "primary jurisdiction" to stay a case pending action by an administrative agency where that agency has been entrusted to the determination of a relevant issue or in which that agency has particular expertise. *See Hansen v. Norfolk & W. R.R. Co.*, 689 F.2d 707, 710 (7th Cir. 1982) (staying complaint pending

administrative proceedings under the doctrine of primary jurisdiction); *Physicians Comm. for Responsible Med. v. Gen. Mills, Inc.*, No. 1:05cv958, 2006 WL 3487651, at *6 (E.D. Va. Nov. 30, 2006) (finding FTC had primary jurisdiction over issues of deceptive advertising). The doctrine of primary jurisdiction was designed to ensure the proper working relationship between agencies and courts. *U.S. v. W. Pac. R.R. Co.*, 352 U.S. 59, 62 (1956); *Far E. Conference v. U.S.*, 342 U.S. 570, 575 (1952). The Supreme Court "recognized early in the development of administrative agencies that coordination between traditional judicial machinery and these agencies was ***necessary if consistent and coherent policy were to emerge***." *Port of Boston Marine Terminal Ass'n v. Rederiaktiebolaget Transatlantic*, 400 U.S. 62, 68 (1970) (emphasis added). Thus, the purpose of the doctrine is both to ensure resolution of issues by an agency with superior expertise and to foster uniform interpretation and consistent regulation. *Clinton v. Jones*, 520 U.S. 681, 710-11 (1997); *see also Wagner & Brown v. ANR Pipeline Co.*, 837 F.2d 199, 201-02 (5th Cir. 1988) (deferring to primary jurisdiction of FERC to ensure uniformity in construction of take or pay clauses).

Under the doctrine of primary jurisdiction, a court will stay a case, even though the case may properly be before it, until an administrative agency has decided some or all of the issues raised by the complaint. *W. Pac. R.R.*, 352 U.S. at 63-64. The doctrine is most often applied when the pending action is in front of an administrative agency "legislatively entrusted with the determination of a particular issue, or in which the agency has particular expertise." *Westport Ins. Corp. v. Atl. Painting Co.,* No. 06 C 5420, 2007 WL 1302972, at *2 (N.D. Ill. May 3, 2007) (citing *In re StarNet, Inc.,* 355 F.3d 634, 639 (7th Cir. 2004)); *Marseilles Hydro Power, LLC v. Marseilles Land & Water Co.,* 299 F.3d 643, 651-52 (7th Cir. 2002)). When properly invoked, "the doctrine requires that the suit be stayed until the agency resolves the issue, whereupon the

5

lawsuit resumes if the agency's resolution . . . has not resolved the entire controversy." *Marseilles*, 299 F.3d at 651. In other words, primary jurisdiction does not oust the court from its role – rather, it provides a mechanism that allows the court to make a more informed and precise decision should litigation proceed. *Ricci v. Chicago Mercantile Exch.*, 409 U.S. 289, 583 (1973); *Chicago Mercantile Exch. v. Deaktor*, 414 U.S. 113, 115 (1973) (per curiam).

### B. The Circumstances Of This Case Are Appropriate For Application Of The Primary Jurisdiction Doctrine

There is "no fixed formula" for applying the primary jurisdiction doctrine. *W. Pac. R.R.,* 352 U.S. at 64; *see also Arsberry v. Illinois,* 244 F.3d 558, 563-64 (7th Cir. 2001). Applicability turns on the "superordinate question" of "whether the reasons for the existence of the doctrine are present and whether the purposes it serves will be aided by its application in the particular litigation." *W. Pac. R.R.,* 352 U.S. at 64. To make that assessment, courts in the Seventh Circuit have considered:

> (a) whether the question at issue is within the conventional experience of judges; (b) whether the question at issue involves technical or policy issues within the agency's particular field of expertise; (c) whether a determination would involve the exercise of agency discretion; (d) the need for a consistent and uniform rule; (e) the likelihood of inconsistent rulings if not referred to the agency; (f) whether the issue has already been before the agency; (g) whether judicial economy is served by having the agency resolve the issue; and (h) whether the referral will result in substantial delay and added expense.

*Gilmore v. Sw. Bell Mobile Sys., L.L.C.,* 210 F.R.D. 212, 221 (N.D. Ill. 2001); *In re Wireless Tel. 911 Calls Litig.*, Nos. MDL 1521, 03 C 2597, 02 C 8808, 2003 WL 22057836, at *1 (N.D. Ill. 2003). Here, the majority of these factors weigh in favor of invoking the primary jurisdiction doctrine in this case until such time as the FTC has completed its redress distribution.

#### 1. The FTC Has Primary Jurisdiction Over Issues Presented In This Case

The Federal Trade Commission Act established the FTC and grants the Commission authority over a broad range of commercial substantive areas, including consumer protection.

6

Specifically, section 5 of the FTC Act, 15 U.S.C. § 45 (2006), authorizes the FTC to investigate unfair trade practices. The purpose of this regulatory scheme is "to stop in their incipiency those methods of competition which fall within the meaning of the word 'unfair.'" *Northam Warren Corp. v. F.T.C.*, 59 F.2d 196, 197 (2nd Cir. 1932) (quoting *F.T.C. v. Raladam Co.*, 283 U.S. 643, 647 (1931)). Because of the FTC's unique administrative expertise and reputation in the area of consumer advertising, and the underlying purpose of providing uniform and consistent resolutions of such issues, the FTC has primary jurisdiction over the issue of commercial advertising. Indeed, in cases dealing with matters similar to those currently before the FTC, courts have gone so far as to ***dismiss*** the case under the doctrine of primary jurisdiction. *See e.g., Physicians Comm.*, 2006 WL 3487651 at *6 (dismissing claims for false and misleading advertising based on primary jurisdiction, finding FTC had "unique expertise in fact-finding on such complicated issues as probable economic impact on consumers of the defendants' dairy product advertising"; noting that FTC was authorized by the FTC Act to investigate and resolve administrative petitions on advertising claims, and stating that there was "clearly a risk of inconsistent judgments if" the various "proceedings were allowed to proceed independently"). Thus, the doctrine of primary jurisdiction should be applied here to stay these proceedings.

2. Concurrent Litigation Of Plaintiff's Lawsuit Creates An Unnecessary Risk Of Conflicting Obligations Regarding Return Of Purchasers' Funds

Although the FTC did not make any formal findings of wrongdoing by Oreck, and Plaintiff still must prove both liability and damages before any funds would be due to him in this forum, deference to the primary jurisdiction of the FTC is still appropriate because substantive rulings by this Court prior to completion of the FTC's consumer redress distribution process have the possibility of impacting Oreck by exposing it to conflicting obligations, such as duplicative payments to Oreck Halo purchasers. *See Physicians Comm.*, 2006 WL 3487651 at

*6. Congress specifically granted the FTC broad authority to both regulate and rectify the use of advertising that concerned the FTC as viewed through its agency lens. *See* 15 U.S.C. § 45-55 (2006).

Here, while civil liability was never established in the FTC inquiry, Plaintiff's claims still present the unnecessary risk of conflicting determinations between the Court and the FTC on the issue of redress to the consumer because of the overlap in the return of funds to consumers. In other words, this Court is being asked to order return of funds as damages while a ***concurrent and overlapping*** administrative determination is being made by the FTC regarding redress. "Invoking the primary jurisdiction doctrine would avoid a judicial solution that might conflict with the regulatory scheme already approved by the appropriate administrative agency." *Loggerhead Turtle v. Cnty. Council of Volusia Cnty., Fla.*, 148 F.3d 1231, 1260 (11th Cir. 1998). Staying the case pending resolution of the consumer distribution process by the FTC is the only way "to promote uniformity and harmony in the regulatory sphere the agency is entrusted to govern." *Friends of Santa Fe Cnty. v. LAC Minerals, Inc.*, 892 F. Supp. 1333, 1350 (D.N.M. 1995). This factor thus weighs heavily in favor of invoking the primary jurisdiction doctrine to stay the proceedings, pending completion of the FTC's distribution process.

### 3. The Court Will Benefit From The Uninterrupted Completion Of The FTC's Consumer Redress Process

One of the bedrock principles of the doctrine of primary jurisdiction is that the public is best served when interference with the federal agencies' administration of regulatory schemes can be avoided. *See Cavanaugh Comms. Corp. v. NYSE, Inc.*, 422 F. Supp. 382, 385-86 (S.D.N.Y. 1976) (applying the doctrine of primary jurisdiction to avoid interference with SEC's administration of the Securities Exchange Act because it would be improper for the court to foreclose enforcement options available to SEC in determining how to best protect the public).

8

"It is axiomatic that 'the advisability of invoking primary jurisdiction is greatest where the issue is ***already before the agency***,'" as it is here. *Roberts v. Chemlawn Corp.*, 716 F. Supp. 364, 366 (N.D. Ill. 1989) (emphasis added) (quoting *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 532 F.2d 412, 420 (5th Cir. 1976)). Indeed, the FTC's oversight of the process is active and ongoing, and although the actual distribution of funds has yet to commence, there exists no potential for undue delay. *See Schwartzman, Inc. v. Atchison, Topeka & Santa Fe R.R.*, 857 F. Supp. 838, 842-43 (D.N.M. 1994). In fact, the FTC has already collected $750,000.00 from Oreck as consumer redress, which funds the Order contemplates as being distributed by the FTC to Oreck purchasers in a manner still to be determined by the FTC, and now the FTC possesses the consumer information (including Plaintiff's) to formulate its distribution plan. (Fergemann Decl., ¶¶ 5-9.) By granting the requested stay, the Court will benefit from having the consumer redress distribution proceed without interference from this action, thereby allowing the process to conclude with the greatest haste and clarity. The outcome of the FTC's distribution process could dramatically frame and/or limit the issues before this Court. Therefore, not interfering with this process will likely benefit this Court and supports the granting of a stay.

Furthermore, the interests of judicial efficiency also militate in favor of granting a motion to stay based on primary jurisdiction. There is no risk to Plaintiff from granting a stay under the doctrine of primary jurisdiction, nor from any delay that a stay may be claimed to cause.

    4.  <u>Plaintiff's Relief Seeks Return Of The Same Funds Held By The FTC</u>

Most importantly, the FTC's consumer redress distribution directly impacts the relief sought by Plaintiff, even though case law has established that "it is not a premise of the doctrine of primary jurisdiction that the agency have the power to give the relief sought in the judicial action." *U.S. v. U.S. Steel Corp.*, 645 F.2d 1285, 1292 n.11 (8th Cir. 1981) (citing *Hewitt-*

9

*Robins, Inc. v. E. Freight Ways, Inc.*, 371 U.S. 84, 89 (1962)); *see also San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 247 (1959) ("Even the States' salutary effort to redress private wrongs or grant compensation for past harm cannot be exerted to regulate activities that are potentially subject to the exclusive federal regulatory scheme."); *IPCO Safety Corp. v. WorldCom, Inc.*, 944 F. Supp. 352, 355-56 (D.N.J. 1996) ("[P]rimary jurisdiction may be applicable even in cases where the questions raised are within the ordinary experience of judiciary." (citations omitted) (internal quotation marks omitted)). Indeed, "[b]ecause of the purpose of the doctrine [of primary jurisdiction] to assure that the agency will not be by-passed on what is especially committed to it and because the resort to the courts is still open after the agency has acted, the doctrine applies ***even if the agency has no jurisdiction to grant the relief sought***.'" *Alberta Gas Chems., Ltd. v. Celanese Corp.*, 650 F.2d 9, 13-14 (2nd Cir. 1981) (emphasis added). In this case, while the FTC is not "granting relief" in terms of legal damages, the consumer redress aspect of the Order is designed to distribute those same funds sought by Plaintiff as part of his "relief." Consequently, there is overlap in the funds at issue.

## II. Plaintiff's Complaint Should Be Stayed In The Interests Of Judicial Efficiency And To Promote Justice

### A. The Court Should Employ Its Discretion To Stay These Proceedings Pending Completion Of The FTC's Consumer Redress Distribution

Alternatively, the Court should grant a stay of proceedings in the interests of judicial efficiency and to promote justice. This Court has "broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton,* 520 U.S. at 706; *see also Landis v. N. Am. Co.,* 299 U.S. 248, 254 (1936) (a district court has the power "to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants"). In determining whether to grant a stay on these grounds, a court will consider both the interest of judicial economy and the potential prejudice or hardship to the parties. *Bradley v.*

*L'Oreal USA, Inc.,* No. 10-cv-433-DRH, 2010 WL 3463203, at *1 (S.D. Ill. Aug. 30, 2010) (quoting *Walker v. Merck & Co.*, No. 05-CV-360-DRH, 2005 WL 1565839, at *2 (S.D. Ill. June 22, 2005)); *see also Bd. of Trs. of the Teachers' Ret. Sys. of Ill. v. Worldcom, Inc.*, 244 F. Supp. 2d 900, 905-06 (N.D. Ill. 2002).

Courts often invoke their inherent power to issue a stay pending completion of a related proceeding if the decision in that proceeding may "narrow the issues in the pending cases and assist in the determination of the questions of law involved." *Landis*, 299 U.S. at 253 (citations omitted); *see e.g., Caccamo v. Greenmarine Holdings, LLC*, No. 01 C 0899, 2001 WL 668929, at *2 (N.D. Ill. June 14, 2001) (exercising discretion to stay proceedings pending determination of issues in a parallel suit in another jurisdiction); *Daugherty v. Welborn*, 813 F. Supp. 655, 662-63 & n.21 (C.D. Ill. 1992) (staying proceedings pending outcome of an appeal in another case).

In fact, courts have even applied these factors in the context of concurrent administrative proceedings and found that a stay is warranted pending the agency's completion of its process. *See e.g., Sandisk Corp. v. Phison Elecs. Corp.*, 538 F. Supp. 2d 1060, 1066-68 (W.D. Wis. 2008) (granting a stay pending completion of proceedings before the International Trade Commission that would address overlapping issues of product infringement; recognizing that although the imposition of a stay would delay plaintiff's receipt of monetary damages, that consideration was outweighed by the burden on the court and defendants of not granting a stay); *see also Genzyme Corp. v. Cobrek Pharms., Inc.*, No. 10-CV-00112, 2011 WL 686807, at *3-4 (N.D. Ill. Feb. 17, 2011) (granting a stay pending reexamination by the U.S. Patent and Trademark Office; noting that although it was unclear how long the process would take, the case was still in its early stages; and finding that the proceedings might not be conclusive of the issues on trial, but could simplify the case, lead to dismissal, encourage settlement, or reduce litigation costs); *Moline*

*Machinery Ltd. v. Pillsbury Co.*, No. CIV.00-2353(MJD/RLE), 2001 WL 1766339, at *2-7 (D. Minn. Dec. 21, 2001) (stay granted pending administrative review of an insurance plan at issue).

Here, each of the factors militates in favor of a stay of proceedings pending the FTC's completion of the consumer redress process.

B.  **A Stay Of Proceedings Is Appropriate To Conserve Judicial Resources And To Protect Defendant From Having To Litigate Potentially Unnecessary Issues**

With respect to the interest of judicial economy, a court will consider whether the grant of a stay will in some way conserve judicial resources. *See Bradley*, 2010 WL 3463203 at *2. A brief stay may be found in the interest of judicial economy if it prevents the court and parties from expending further resources when another decision or proceeding may be dispositive or at least have an impact on the proceedings. *Id.* (finding that a brief stay would be "prudent and in the interest of judicial economy" where a related case on appeal in the Federal Circuit would "likely aid in rendering a determination as to the standing issue" presented in the case); *see also Sandisk*, 538 F. Supp. 2d at 1066-67.

The interest of judicial efficiency mandates a stay of this action because of the overlapping and ongoing FTC consumer redress process. The FTC has already collected a significant amount of money from Oreck which will be used, at the FTC's discretion, for consumer redress. Plaintiff is seeking those same funds that are being returned to consumers by the FTC. Until that process has been completed, the exact "damage" each purchaser is allegedly out of pocket – if any – cannot be determined.

Upon conclusion of the FTC's process, it is likely that the FTC's actions will directly impact damages, which is an element of each claim alleged by Plaintiff. As such, the consumer redress process should be completed before the parties move forward with this lawsuit.

Moreover, a stay is proper even if the FTC's proceedings will have *no preclusive effect* on this Court, because the FTC's proceedings might simplify the case, "expedite proceedings and provide useful information to the court." *Sandisk*, 538 F. Supp. 2d at 1067. Under these circumstances, the requested stay would preclude an unnecessary expenditure of time and resources by the parties and this Court. *See id.* at 1066-67.

### C. Plaintiff Will Not Be Prejudiced By A Stay Of These Proceedings

With respect to potential prejudice or hardship to the parties, a court will consider whether a stay would place *undue burden* or *great prejudice* upon the parties. *Bradley*, 2010 WL 3463203 at *4. There is less of a chance of prejudice from delay when the case is in its very early stages (*i.e.* Defendant has not filed an answer, discovery has not begun, or the Court has not yet entered a discovery or briefing schedule). *Id.* at *2-3 (short stay would save the parties from pretrial discovery and briefing, or at least maintain the "status quo"). Furthermore, a court might find there is less likelihood of prejudice if the plaintiffs in the case are only seeking damages provided for by statute (rather than compensation for injuries). *Id.*

A stay of limited duration is appropriate here because the lawsuit is in the early stages, and the FTC proceedings have already commenced and are ongoing. Because this case remains in its infancy, the risk of prejudice or hardship to the parties is diminutive while of great benefit to the Court. The grant of a stay of proceedings would have the effect of reducing the costs of litigation – or, at the very least, maintaining the "status quo." *See id.* at *2-4.

Finally, not only does Plaintiff here seek monetary statutory damages, rather than compensatory damages, but the ongoing FTC consumer redress process even further reduces any likelihood of prejudice. *See Sandisk,* 538 F. Supp. 2d at 1067-68; *Bradley,* 2010 WL 3463203 at *2-3. The money *already collected* by the FTC is designed to be distributed to Oreck Halo

consumers in the near future, meaning that Plaintiff and putative class members may be reimbursed during the pendency of a stay. Thus, the minimal harm to Plaintiff from a stay, particularly when compared to the harm to Defendant that undoubtedly would result from superfluous litigation, further counsels strongly in favor of a stay in this action.

In sum, as with the balancing analysis under the primary jurisdiction doctrine, the scale is tipped far in favor of granting Defendant's motion to stay in the interests of judicial efficiency.

### III.  This Case Should Be Stayed Until The Consumer Redress Distribution Is Completed To Ensure Plaintiff Continues To Have Standing To Pursue His Claims

Further, this Court should exercise its discretion to stay this case to avoid potential constitutional infirmities – namely, Plaintiff's inability to satisfy the standing requirements of Article III. Plaintiff's Complaint seeks the return of the monies paid by Plaintiff to Oreck as damages, and there is no reason to believe that Plaintiff would not receive funds as a result of the redress, as his information was duly provided to the FTC under the procedures required by the FTC under the Order that identify all Halo users and the amount of their purchases.[1] (*See* Complaint, Prayer for Relief ¶ b ("Damages in the amount of monies paid by Plaintiff and the class for the Oreck Halo vacuum products."); Fergemann Decl., ¶ 10.)

Until that distribution process is completed, whether Plaintiff will have standing to maintain this action under Article III, either individually or as a class representative, is unknown. If Plaintiff no longer can claim to be out-of-pocket the funds he paid for the Oreck Halo, he will no longer be able to allege one of the fundamental criteria for stating each of the claims in his

---

[1] While Oreck has no right to control, challenge or otherwise manage the method or manner of distribution, Oreck has no reason to believe that the FTC's ability to effect direct redress will be "wholly or partially impracticable." Unlike other industries and products, consumer information for Oreck Halo purchasers was compiled in the course of the purchase and for warranty servicing, and thus available to the FTC. Moreover, the FTC has been actively involved in adopting and utilizing consumer redress programs for a number of years, and has been proactive in distributing checks to consumers under such programs. (*See* Fergemann Decl. ¶¶ 8-11; Exs. D-F (FTC news releases regarding the FTC's issuance of consumer redress checks to consumers).)

complaint, *i.e.*, damage. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 & n.1 (1992) (the "irreducible constitutional minimum of standing" requires an injury that is "concrete and particularized," affecting the plaintiff "in a personal and individual way"). Furthermore, Plaintiff cannot rely on the class allegations in this case to circumvent the requirements of Article III because even a plaintiff who purports to "represent a class must allege and show that [he] personally ha[s] been injured, not that injury has been suffered by other, unidentified members of the class . . . which . . . [he] purport[s] to represent." *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 n.20 (1976) (emphasis added) (internal quotation marks omitted); *see also O'Shea v. Littleton*, 414 U.S. 488, 494 (1974) (where named plaintiffs lack standing, they cannot seek relief on their own behalf or for class members).

For these reasons, the issue of the FTC's consumer redress distribution impacting Plaintiff's continued ability to claim he has been damaged – and thus his standing to pursue the claims – should be resolved before this case continues to sap the resources of the Court and the parties. A stay during this interim period is appropriate and warranted.

## CONCLUSION

For the foregoing reasons, the present action should be stayed.

ORECK CORPORATION

By   /s/ David J. Doyle

Dated: July 15, 2011

David J. Doyle
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, Illinois 60601-9703
(312) 558-5600

David L. Aronoff, *Pro Hac Vice pending*
Gayle I. Jenkins, *Pro Hac Vice pending*
Saul S. Rostamian, *Pro Hac Vice pending*
333 South Grand, 38th Floor
Los Angeles, California 90071
(213) 615-1700